ROECKNER, APPELLEE, *v.* PENCE DRAG STRIP, INC., APPELLANT.

[Cite as Roeckner v. Pence Drag Strip, Inc.,
10 Ohio App. 2d 20.]

(No. 202—Decided December 29, 1965.)

*Messrs. Slicer & Roberts,* for appellee.
*Mr. R. E. Boller, Jr.,* for appellant.

KERNS, J. This is an appeal on questions of law from a judgment of the Court of Common Pleas of Shelby County.

The plaintiff's petition, which explains the nature of the controversy, provides in pertinent part as follows:

"That the defendant, Pence Drag Strip, Inc., owns and operates a race track on which automobile race drivers enter into competition with each other for monetary prizes, and at which races spectators pay an admission fee to the defendant to view said races;

"That on or about July 7, 1963, the plaintiff, Dale Roeckner, entered his racing automobile in a certain race at defendant's track located in Shelby County, Ohio; that the defendant, through its agents, servants and employees, was erecting a wire fence to separate the racing area from the spectator area and the pit area, and that rolls of wire fence

were lying on the ground parallel with the track; that the plaintiff, during one of the racing heats, went off the asphalt surface of the track and onto the dirt shoulders parallel thereto; that part of the wire fence was unrolled and lying on the dirt shoulders, and when plaintiff's racing car went across said fence, the fence tore loose the gasoline tank, causing an instantaneous explosion and fire; that the plaintiff, Dale Roeckner, received second and third degree burns on his hands and arms which required hospitalization and other medical attention.

"Plaintiff further says that the explosion and fire and the resulting personal injuries were directly and proximately caused by the acts and omissions of the defendant, its agents, servants or employees acting in the scope of their employment, in the following respects, to wit:

"1. In failing to have the track of the defendant and the surrounding area in a safe and proper condition.

"2. In maintaining rolls of wire fence near the racing area, knowing the likelihood of the racing automobiles to leave the track and drive onto the dirt shoulders adjacent thereto."

The defendant's answer, while denying negligence, also sets up the defenses of contributory negligence and assumption of the risk.

The issues were tried to a jury which returned a verdict in favor of the plaintiff in the sum of $5,650.

Thereafter, the defendant filed a motion for a new trial and a motion for judgment notwithstanding the verdict. Both motions were overruled by the trial court.

In the present appeal, the defendant agrees that there was sufficient evidence to raise a jury question as to its negligence, but contends that the evidence presented upon the issues of contributory negligence and assumption of risk was such as to preclude the submission of the case to the jury.

Hence, although no assignments of error are set forth as such in the brief of defendant, appellant herein, the entire case appears to depend upon whether the trial court erred in overruling the defendant's motion for judgment notwithstanding the verdict.

According to the defendant, the drag strip is about 40 feet

wide and extends from north to south. There are no races held thereon in the conventional sense. Only one racing car at a time uses the track. In this type racing, a car starts from a stationary position and accelerates until it reaches a point about half way down the track where it passes under an automatic timing mechanism. The last half of the paved raceway is used solely for deceleration. The defendant's track was paved with concrete for a distance of 100 feet and with asphalt for a further distance of one-half mile.

On July 7, 1963, the plaintiff brought his racing car to the defendant's track and entered it in racing events to be held that afternoon.

The defendant at the time was in the process of erecting a chain-link fence along the west side of the track for the purpose of protecting spectators. Part of the fence had been installed beginning at the north end of the track. The portion of the fence which had not been erected was lying flat upon the ground and extended toward the paved area of the track. The testimony of the witnesses concerning the distance between the west side of the paved track and the fence on the ground varied from four to twenty feet, and one of the witnesses testified that grass was growing on the berm about six inches high. At the end of the fence, there was a fence stretcher consisting of two boards held together with carriage bolts.

The plaintiff started his racing car in the usual manner. As he passed over a slight rise in the surface of the track at a point where the concrete ends and the asphalt begins, the vehicle drifted toward the center of the track where the tires came upon an accumulation of dust and debris. There is a conflict in the testimony as to whether such collection of dust was normal or abnormal on a drag strip, but, in any event, the vehicle veered in a westwardly direction and off the paved portion of the strip. At a point near the berm, the vehicle passed over a portion of the fence lying on the ground, whereupon the carriage bolts on the fence stretcher ruptured the gas tank causing the ensuing explosion and fire.

As heretofore noted, the defendant, in seeking a reversal of the judgment, relies upon the defenses of contributory negli-

gence and assumption of the risk. And the burden of proving these defenses was upon the defendant.

But one is not chargeable with assumption of risk unless he knows about the danger or risk, appreciates the possible consequences, and consents to assume it. Here, the race driver undertook all risks ordinarily incident to the sport in which he was engaged, but such driver was under no duty to anticipate abnormal track conditions or foreign obstacles at or near the berm of the track.

There is ample evidence in the record of these unusual conditions, and the issue raised by the defense of assumption of risk was, therefore, properly submitted to the jury. The same may be said of contributory negligence. The plaintiff presented substantial evidence to show that he acted in a reasonable and prudent manner when confronted with the conditions allegedly caused by the defendant's negligence.

In considering a motion for judgment notwithstanding the verdict, it must be remembered particularly that the weight of the evidence is not involved. The established principles governing such a motion are discussed in *Kenny* v. *Metropolitan Life Ins. Co.*, 82 Ohio App. 51, at page 55, where the court states:

"Now what is the issue on a motion for judgment notwithstanding the verdict? It is manifest that it raises the same issue as a motion for a directed verdict made at the close of all the evidence. It is said in *J. & F. Harig Co.* v. *City of Cincinnati*, 61 Ohio App. 314, 22 N. E. 2d 540, that it is nothing more than an iteration of that motion. And a motion for a directed verdict is 'in the nature of a demurrer to the evidence' and 'involves, for its purposes, an admission or assumption of the truth of the evidence supporting the facts essential to the claim of the party against whom the motion is directed, as well as an admission of all the facts which the evidence proves or tends to prove or support and all reasonable inferences which a jury might draw therefrom.' 39 Ohio Jurisprudence 799, 800.

"In other words, such a motion calls upon the court to determine the one issue of whether there is any evidence of substantial probative value in support of the adverse party's claim

or defense. It poses the question of the materiality of the evidence. It does not raise any issue as to the competency of the evidence that has been received.''

Governed by the foregoing principles, and in view of evidence pertaining to both assumption of risk and contributory negligence upon which reasonable minds might differ, we are satisfied that the motion for judgment notwithstanding the verdict filed in the present case was properly overruled by the trial court.

The judgment will, therefore, be, and hereby is, affirmed.

*Judgment affirmed.*

SHERER, P. J., and CRAWFORD, J., concur.