KLINE, Appellant,

v.

OID ASSOCIATES, INC. et al., Appellees.

[Cite as *Kline v. OID Assoc., Inc.* (1992), 80 Ohio App.3d 393.]

Court of Appeals of Ohio,
Summit County.

No. 15427.

Decided May 6, 1992.

[black redacted boxes]

*Robert C. Meeker,* for appellant.

*David S. Daddona,* for appellee OID Associates.

*Hunter S. Havens,* for appellee Jack Mercer.

*Chris T. Nolan,* for defendant James Moore.

COOK, Judge.

Kevin Kline appeals the lower court's granting of summary judgment in favor of Jack Mercer, OID Associates ("OID"), and Force Fitness Institute ("FFI"). We affirm.

On March 17, 1989, Kline was injured during a co-ed adult indoor soccer game which was held at Springside Racquet and Fitness Center. The two teams were playing aggressively. At one point, with about four minutes left in the game, a physical altercation occurred between some of the players on both teams. Mercer, the referee, ejected the goalie on Kline's team from the game. As a result, Kline took the goalie position. The game continued at high intensity. With less than one minute left, James Moore, a player on the opposing team, attempted to make a goal, which Kline blocked by diving to the side and covering the ball with his body. Moore thereafter attempted either to kick the ball or to intentionally kick Kline. As a consequence of Moore's action, Kline suffered a broken wrist and elbow.

Kline filed a complaint against Moore, Mercer, OID (the owner of the facility where the game was played) and FFI (the organizer of the soccer league), alleging that his injuries were caused by their negligent, intentional or reckless conduct. Mercer, OID, and FFI filed motions for summary judgment. The trial court granted summary judgment in favor of Mercer, OID and FFI, stating that there were no material issues of fact.[1] Kline now appeals assigning four errors.

---

1. The lower court denied a motion for summary judgment filed by Moore.

### Assignments of Error

"I.  The trial court committed prejudicial error by awarding summary judgment to defendants-appellees based on the trial court's conclusion that all defendants are held to the recklessness or intentional acts standard of care enunciated in *Marchetti* [*v. Kalish* (1990), 53 Ohio St.3d 95, 559 N.E.2d 699] and *Thompson* [*v. McNeill* (1990), 53 Ohio St.3d 102, 559 N.E.2d 705].

"II.  The trial court committed prejudicial error by awarding summary judgment to defendants-appellees based on the trial court's conclusion that plaintiff-appellant assumed the risk of his injury.

"III.  The trial court committed prejudicial error by awarding summary judgment to defendants-appellants [*sic*] based on the trial court's conclusion that defendants-appellants [*sic*] owed no duty to plaintiff-appellant.

"IV.  The trial court committed prejudicial error by awarding summary judgment to defendants-appellees based on the trial court's conclusion that defendants-appellees did not breach their duty to plaintiff-appellant."

■  Each of the assignments of error challenge the trial court's summary judgment ruling.  Each one sets forth an alleged basis for the trial court's ruling and why such a basis is error.  The trial court, however, did not state the basis for its ruling other than that there were no material issues of fact. Therefore, this court need only determine whether, based upon the record, the granting of summary judgment was proper.  See *Joyce v. Gen. Motors Corp.* (1990), 49 Ohio St.3d 93, 96, 551 N.E.2d 172, 174.  In determining whether summary judgment is appropriate, we must examine the evidence in a light most favorable to the nonmoving party and find that there is no genuine issue as to any material fact, that the moving party is entitled to judgment as a matter of law and that reasonable minds can only come to one conclusion and that conclusion is adverse to the party against whom summary judgment is made.  *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 273.

■  In a case involving one player against another, the Supreme Court of Ohio determined that before a party may proceed with a cause of action involving injury resulting from a recreational or sports activity, reckless or intentional misconduct must exist.  *Marchetti v. Kalish* (1990), 53 Ohio St.3d 95, 99–100, 559 N.E.2d 699, 702–704.  Whether the game is organized, unorganized, supervised or unsupervised, the standard of liability remains the same.  *Id.* at 98, 559 N.E.2d at 702.  Such a standard strikes a balance between encouraging vigorous and free participation in recreational or sport activities, while ensuring the safety of the players.  *Id.* at 99, 559 N.E.2d at 702.  The same logic and standard should apply to nonparticipants involved in

the game, unless there is evidence of negligent supervision. To successfully state a cause of action under the theory of negligent supervision, the party must produce evidence such as a defendant allowing a player with a known propensity toward violence to play or allowing a team to play when there was a total absence of management. *Brown v. Day* (1990), 68 Ohio App.3d 447, 449, 588 N.E.2d 973, 974, citing *Hanson v. Kynast* (1986), 24 Ohio St.3d 171, 179, 24 OBR 403, 410, 494 N.E.2d 1091, 1098 (Holmes, J., concurring).

In his response to the motion for summary judgment, Kline failed to sufficiently raise the issue that his injuries were a result of the recklessness or intentional acts of the parties, or that the parties were negligent in their supervision of the game. He stated: "* * * a strong argument could be made that [FFI's conduct] amounted to recklessness," but did not make the argument. With regard to OID, Kline stated: *"although it has not yet been shown that Defendant, OID or its agents had direct knowledge* of the extreme aggressiveness of the game, the fact that it occurred on the premises with a manager on duty in charge of supervising the facility indicates that Defendant OID, at least through one of its agents, should have known of it." Once again, there is no evidence of recklessness or intentional misconduct on the part of the defendant. Nor is there a material issue as to negligent supervision because Kline did not present any evidence that OID, FFI, or their agents, knew that Moore or his team members had a propensity for violence or were likely to intentionally cause injury. *Brown, supra; Nganga v. College of Wooster* (1989), 52 Ohio App.3d 70, 557 N.E.2d 152. Kline argued that Referee Mercer "should have known that the continuation of the game would create an unreasonable risk of harm to the participants," but failed to provide any evidence that Referee Mercer had superior knowledge to Kline's or the other players' and either recklessly or negligently allowed the game to be continued.

From the evidence presented, it appears that Kline, with his thirty years of soccer experience, had at least as much knowledge of any potential for injury in the game as appellees. If it was so obvious that the level of play was too dangerous, Kline could have elected not to play. By continuing to play, Kline assumed the ordinary risks of the game, including the possibility of being injured. *Marchetti, supra,* 53 Ohio St.3d at 100, 559 N.E.2d at 704. Getting kicked is a common occurrence in soccer, because of the closeness of the players who are also trying to kick or block the ball. See, generally, *Thompson v. McNeill* (1990), 53 Ohio St.3d 102, 106, 559 N.E.2d 705, 709.

Kline failed to establish that the appellees knew that the game involved any risk greater than the ordinary risk a player assumes when he plays soccer. Nor did he show that his injuries were a result of intentional conduct or

recklessness on the part of appellees. Accordingly, his assignments of error are overruled and the judgment of the lower court is affirmed.

*Judgment affirmed.*

QUILLIN, P.J., and CACIOPPO, J., concur.