OPINION
On September 3, 1997, appellant and appellee participated in a soccer game at The Field, an indoor soccer facility in Monroe, Ohio. Appellant was playing defense and appellee was playing offense on opposing teams. Before the injury at issue in this case, the parties made a mutual play on the ball which resulted in appellee falling on the artificial turf surface. Appellant contends that appellee claimed she was fouled intentionally, although the referee did not call a foul on the play. Appellant claims that appellee then followed her closely as she moved on the field, staying within an arm's length of her.
As the ball bounced off a wall, appellant raised her right leg in an attempt to clear the ball, which was coming towards her. She claims appellee pushed her forcefully below the shoulder blades with two hands, causing her to fall. Because she was balanced on only her left leg, her body twisted to the left as she fell. Appellant suffered an injury to her knee as a result of the fall. According to appellant, the contact was intentional and appellee was following her waiting for a chance to get revenge for the earlier play.
Appellee's version of the incident differs in that she contends that the contact was shoulder to shoulder and not intentional. She claims that she was going toward the ball when she and appellant made contact. Appellee was penalized for two minutes following the play.
On August 13, 1998, appellant filed a complaint in the Butler County Court of Common Pleas claiming appellee recklessly and/or intentionally caused her injury during the soccer match. Appellee filed a motion for summary judgment, contending that she was entitled to judgment as a matter of law. The trial court granted summary judgment to appellee on May 11, 1999. The trial court concluded that appellee could not be held liable as a matter of law due to the fact that pushing is a foreseeable risk of the game of soccer. On appeal appellant raises the following single assignment of error:
 THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF VAN AS.
 Summary judgment is appropriate pursuant to Civ.R. 56(C) when (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) construing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to only one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66. The party seeking summary judgment bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact as to the essential elements of the nonmoving party's claim. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. "[I]f the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate shall be entered against the nonmoving party." Id. Our standard of review on summary judgment is de novo. Jones v. Shelly Co. (1995), 106 Ohio App.3d 440.
The Supreme Court of Ohio has set forth the standard of law applicable to cases involving injuries to participants of sporting events:
 Where individuals engage in recreational or sports activities, they assume the ordinary risks of the activity and can not recover for any injury unless it can be shown that the other participants' actions were either "reckless" or "intentional" as defined in Sections 500 and 8A of the Restatement of Torts 2d.
Marchetti v. Kalish (1990), 53 Ohio St.3d 95, syllabus.
 Recklessness is defined as a disregard to the safety of another if the actor "does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to the another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." Thompson v. McNeill (1990), 53 Ohio St.3d 102, 104-05, quoting Restatement of the Law 2d, Torts (1965), Section 500. Reckless misconduct involves a "conscious choice of a course of action, either with the knowledge of serious danger to others involved in it or with the knowledge of facts that would disclose this danger to any reasonable man." Ickles v. Tille 110 Ohio App.3d 438, 442, quoting Restatement at 590, Section 500, Comment g. "What constitutes an unreasonable risk under the circumstances of a sporting event must be delineated with reference to the way a particular game is played, i.e., the rules and customs that shape the participants' ideas of foreseeable conduct in the course of a game." Thompson at 105.
An intentional act occurs where the actor desires the consequences of his act or believes the consequences to be substantially certain to result from his conduct. The conduct of an athlete who intentionally injures another athlete in a way not authorized or anticipated by the customs and rules of the game violates the duty not to commit an intentional tort. Thompson at 104. Appellant must demonstrate that appellee "inflicted injury outside the scope of the ongoing conduct of the sport" or had a "perverse intent to cause physical injury separate and apart from the heat of the contest." Hanson v. Kynast (1987), 38 Ohio App.3d 58. There is an inverse relationship between the dangerousness of a game and the duty owed to another participant. Thompson at 105. The higher risk in a contact sport reduces the duty players have not to engage in conduct creating risks of injury. Bentley v.Cuyahoga Falls Board of Education (1998), 126 Ohio App.3d 186,190. Violation of a rule is only one part of the inquiry and a rule violation must be analyzed as to whether such a penalty would be a foreseeable part of the particular sport. Bentley at 192.
Appellant contends that appellee acted both recklessly and intentionally. Appellant claims there was an unreasonable risk of probable harm she would be injured by the push due to the fact that her back was to appellant and her right leg in the air. She also argues that the risk of injury was greater due to the nature of the artificial turf surface and the force of the push. Appellant contends that the injury was intentional in retaliation for the earlier play in which appellee fell.
Appellant admitted that soccer is a contact sport and that she has been involved in rough games before and in games where players have been "red and yellow carded" and penalized. Catherine Proffit, a teammate of appellant, testified that soccer is a contact sport and that pushing, shoving and tripping occur during the course of a soccer game. Proffit testified that she has pushed, shoved and tripped other players on the soccer field and that the level of aggressiveness depends on how aggressive her opponent is playing. She stated that pushing, shoving and tripping, although not necessarily part of the game, occurs, and is a risk players assume when they chose to play. Other Ohio courts have determined that soccer is a high-contact sport.Nganaga v. College of Wooster (1989), 52 Ohio App.3d 70, 72;Bentley, 126 Ohio App.3d at 190-92.
Appellee contends that summary judgment was appropriate because the evidence indicates pushing is a foreseeable aspect of playing soccer. To survive the motion for summary judgment, appellant has required to set forth specific facts to establish a genuine issue of material fact that appellee's conduct was either reckless or intentional. Both inquiries involve a determination of what type of conduct is customary and foreseeable within the context of the game.
Appellant testified that she thought appellee was waiting for a chance to get back at her because of the earlier incident. When requested to explain exactly how she knew appellee's conduct was more than just rough play, appellant stated only that she felt two hands on her back, the force of the push, and that she saw appellee just stand there and then turn and walk away after falling.
Viewing the evidence in a light most favorable to appellant, the push was intentional. However, intent to commit an act should be differentiated from intent to injure outside the scope of the game. Appellant has not met her burden of demonstrating that the push was intended to cause injury in a way not authorized or anticipated by the customs of the game. Appellant admits that she was about to make a play on the ball directly in front of the goal in order to get the ball away from the opposing team and to prevent them from scoring. Pushing and shoving, along with aggressive behavior, are anticipated actions in the game of soccer. Appellant's subjective belief that appellee intentionally pushed her in retaliation does not meet her burden in this case. She has not raised specific facts, as required on a motion for summary judgment, to demonstrate that appellee intended to inflict injury on her outside the scope of the game, nor has she pointed to any specific behavior by appellee as being unforeseeable within the context of a soccer match. Although the two players had a prior encounter, there are no facts which distinguish appellee's behavior from typical aggressive behavior "in the heat of the contest." Appellant assumed any additional risks due to the artificial turf surface when she chose to take part in the game. Appellant has not provided any specific facts that take the push outside the scope of foreseeability in a soccer game.
Appellant also argues that appellee should be held liable for public policy reasons. She argues that the trial court failed to appreciate the distinction between routine and extraordinary contact in soccer. We disagree. The witnesses all testified that soccer is an aggressive, contact sport that involves pushing and penalties. Appellant has not provided any facts which remove appellee's conduct from the type of normal, aggressive play that would be foreseeable. We are mindful of the goal to "strike a balance between encouraging vigorous and free participation in recreational or sports activities, while ensuring the safety of the players." Marchetti, 53 Ohio St.3d at 99. Rule violations that are a foreseeable and expected part of a game are best dealt with by the game officials and not by the courts.
A soccer field is not a war zone in which any aggressive, violent contact is permissible. Summary judgment would not have been appropriate if appellant had been able to point to specific facts to negate the foreseeability of the contact. If she had not been making a play on the ball or had the contact been of a nature not customary within the game, issues might exist for trial. However, even construing the evidence in appellant's favor, she admits that she was making a play on the ball and that pushing is a part of soccer.
Judgment affirmed.
 ______________________________ Presiding Judge POWELL, P.J.
YOUNG, J., concurs.
WALSH, J., dissents.